IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MELANIE EUBANKS, beneficiary
of the claim of Nicholas
Zawicki, deceased,

               Plaintiff,

     v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

           Defendant.

Case No. 3:12-cv-00422-MA

OPINION AND ORDER

BRUCE W. BREWER
419 Fifth Street
Oregon City, OR 97045

    Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902

WILLY M. LE
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98104

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Melanie Eubanks, widow and beneficiary of claimant Nicholas A. Zawicki, brings this action for judicial review of a final decision of the Commissioner of Social Security denying claimant's application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C §§ 401-403. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons that follow, this court affirms the decision of the Commissioner.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 8, 2008, claimant[1] protectively filed an application for a period of disability and disability benefits. Claimant alleged disability beginning April 1, 2008, as amended, due to depression and degenerative disc disease of the lumbar spine. The claims were denied initially on December 5, 2008, and on reconsideration on March 20, 2009. Claimant filed a request for a hearing before an administrative law judge (ALJ). The ALJ held a hearing April 28, 2010, at which claimant appeared with his attorney and testified. Also appearing and testifying were David R. Rullman, M.D., a medical expert; Richard M. Hinks, a vocational expert; and plaintiff.

---

[1]For clarity, I refer to Melanie Eubanks as "plaintiff" and Nicholas Zawicki as "claimant" throughout this opinion.

On May 5, 2010, the ALJ issued an unfavorable decision.  The Appeals Council denied claimant's request for review on January 4, 2012, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Claimant was 39 years old as of the date of the hearing, has an eighth grade education, and can read and write in English. Claimant has past relevant work as an auto parts delivery driver, construction laborer, and salvage worker.

### THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920.  Each step is potentially dispositive.  The claimant bears the burden of proof at steps one through four.  See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy.  Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

The ALJ concluded that claimant met the insured status requirements of the Social Security Act through December 31, 2012. A claimant seeking DIB benefits under Title II must establish disability on or prior to the last date insured.  42 U.S.C. § 416(I)(3); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ found that claimant has not engaged in substantial gainful activity since his amended alleged onset of disability date of April 1, 2008. See 20 C.F.R. § 404.1571 *et seq*.

At step two, the ALJ found that neither claimant's depression nor lumbar degenerative disc disease were medically determinable impairments. However, giving claimant the benefit of every doubt, the ALJ found claimant's degenerative disc disease of the lumbar spine a severe impairment. See 20 C.F.R. § 404.1520(c).

At step three, the ALJ found that claimant's impairment, or combination of impairments, did not meet or medically equal a listed impairment. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.

The ALJ assessed claimant with a residual functional capacity (RFC) to perform modified light exertion work as defined in 20 C.F.R. §§ 404.1567(b), except with some mild nonexertional limitations. Specifically, the ALJ determined that claimant can walk 20 minutes at a time or up to four blocks at a time on a level surface; he can sit for sit for six or more hours and stand and walk two hours in each activity (cumulatively, not consecutively) in a normal eight-hour work day with normal breaks; claimant can lift and carry 20 pounds occasionally and 10 pounds frequently; claimant can push/pull 20 pounds occasionally; claimant has 90 percent stamina secondary to fatigue complaints; and claimant is limited to unskilled work. See 20 C.F.R. §§ 404.1527, 404.1529.

At step four, the ALJ found claimant unable to perform any past relevant work. See 20 C.F.R. § 404.1565.

At step five, the ALJ concluded that considering claimant's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that claimant can perform. See 20 C.F.R. §§ 404.1560(c), 404.1566. Accordingly, the ALJ concluded that plaintiff is not disabled within the meaning of the Act.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the ALJ committed the following errors: (1) improperly discredited claimant's testimony; (2) failed to give the opinion of Jeffrey Young, D.O., controlling weight; (3) failed to properly consider the lay testimony; and (4) failed to confirm that the vocational expert's (VE) testimony is consistent with the Dictionary of Occupational Titles (DOT).

The Commissioner argues that plaintiff has failed to challenge the ALJ's Step Two determination that claimant did not establish any medically determinable impairments, and therefore, plaintiff's remaining issues are waived. Alternatively, the Commissioner submits that the ALJ's alternative nondisability determination at Step Five must be affirmed.

////

////

5 - OPINION AND ORDER

### STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); Andrews, 53 F.3d at 1039.  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.; Valentine, 574 F.3d at 690.  The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation.  Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012); Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).  If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001); Batson v. Commissioner of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).

### DISCUSSION

**I.   Step Two**

At Step Two, the ALJ must determine whether a claimant has one or more impairments that significantly limit his or her ability to conduct basic work activities.  Ukolov v. Barnhart, 420 F.3d 1002, 1003 (9th Cir. 2005); 20 C.F.R. § 404.1520(c).  A claimant has the burden to present evidence of medical signs, symptoms, and

laboratory findings[2] that establish a medically determinable physical or mental impairment that is severe, and that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months.   Id. Pain is not an impairment.   20 C.F.R. § 404.1529.   Moreover, "'under no circumstances may the existence of an impairment be established on the basis of symptoms alone.'"   Ukolov, 420 F.3d at 1005 (quoting SSR 96-4p, available at 1996 WL 374187 *1)); see also 20 C.F.R. § 404.1508.

Step two is "a de minimis screening device [used] to dispose of groundless claims."   Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).   The court must determine whether an ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments.   Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005)(citation omitted); see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.").   An impairment or

---

[2]"An 'impairment' must result from an anatomical, physiological, or psychological abnormality that can be shown by medically acceptable clinical and laboratory diagnostic techniques[.]"   SSR 96-4p.   A "symptom" is "'an individual's own perception or description of the impact of his or her physical or mental impairment(s)[.]'"   Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005)(quoting SSR 96-4p).

combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." Webb, 433 F.3d at 686 (citation omitted).

In this case, the ALJ determined at Step Two that claimant's alleged depression is not severe. The ALJ's finding concerning claimant's alleged depression is supported by substantial evidence in the record, and is not challenged by plaintiff. In discussing claimant's alleged back pain at Step Two, the ALJ exhaustively examined claimant's medical records.

The ALJ detailed a November 2000 MRI of claimant's lumbar spine which revealed mild degenerative changes at L4-5, "indicative of very early degenerative changes" without stenosis, and otherwise normal. Tr. 18, 206. The ALJ discussed that the result of an April 2001 electromylegram (EMG) nerve conduction study was entirely normal, noting that claimant was observed to sit without pain for the duration of the testing, and had full strength in all extremities. Tr. 201, 252. The ALJ noted that in April 2001, claimant was released to perform "medium exertion" level work. Tr. 249-56. The ALJ noted that several months later, claimant underwent a physical in order to attend truck driving school as part of vocational retraining. Tr. 386.

The ALJ discussed that in February of 2002, claimant saw Terry L. Connor, D.O., complaining of back pain with heavy lifting, and

that the treatment notes suggested claimant was working at that time.  Tr. 383.  At that time, claimant was diagnosed with a back strain, and released to light duty work.  Id.

The ALJ discussed that claimant next sought treatment from Dr. Connor in September of 2004, who noted that "it has been 2½ years since we've seen him."  Tr. 380.  Claimant reported to Dr. Connor that he had been free of any serious episodes since 2002, but recently had a sudden recurrence of back pain.  Dr. Connor diagnosed lumbosacral strain and prescribed Celebrex and Skelaxin.  As the ALJ noted, Dr. Connor reported that claimant had a decreased range of motion and muscle spasms.  The ALJ also discussed that claimant reported to Dr. Young on April 11, 2008, for follow up treatment after sustaining a facial fracture that he received in a bar fight a couple of weeks earlier.  As the ALJ discussed, Dr. Young noted that claimant had received good relief with Norco, and that claimant indicated he was drinking 12 to 24 drinks per weekend.

The ALJ discussed a September 23, 2008 orthopedic consulative examination conducted by Terri Robinson, M.D.  Dr. Robinson noted that claimant complained of atypical radiculopathy into his mid-back and legs, and that all imaging revealed no abnormalities or degeneration at L5-S1.  The ALJ noted that Dr. Robinson did not find any muscular atrophy or bony deformities, and that claimant's complaints and pain behaviors were out of proportion to the

clinical findings and the examination. Dr. Robinson assessed that claimant's physical exertional capacity at medium. Tr. 420-24.

The ALJ discussed that claimant's treating physician became Dr. Young in April of 2008, and that in January of 2009, claimant reported continued low back pain. Dr. Young noted a mild decreased range of motion and tenderness, but reported otherwise normal findings. At that time, claimant reported taking six to eight Percocet a day. The ALJ noted that despite the benign findings, Dr. Young prescribed Oxycodone and Morphine. The ALJ also discussed a January 25, 2010 letter authored by Dr. Young in which Dr. Young opines that claimant suffers lumbar degenerative disk disease at the L4-5, chronic low back pain, gastroesophageal reflux disease (GERD) and that claimant would miss three days of work each month due to low back pain and depression. The ALJ discussed that claimant's concurrent January 2010 X-rays of his lumbar spine revealed "minimal narrowing at L4-5" showing "very early degenerative changes," which were essentially unchanged since imaging in 2000.

Next, the ALJ discussed the testimony of the medical expert Dr. Rullman, who opined that claimant's X-rays and MRI's over a 10-year period demonstrated no abnormalities of any significance. Dr. Rullman testified that aside from Dr. Young agreeing with claimant's subjective complaints, there was no "medically based diagnosis" of lumbar degenerative disc disease. The ALJ also noted

Dr. Rullman's observation of another examining physician, Dr. Glass, who expressed concern that claimant used narcotics to perpetuate and legitimize his back pain.

> The ALJ concluded his lengthy Step Two findings by stating:

> [W]e find the claimant's alleged back pain is without medical signs or clinical findings to establish as a medically determinable impairment. Nonetheless, in order to proceed on through the sequential disability evaluation process, the claimant must have at least one severe impairment. Therefore, only in giving the claimant every benefit of doubt do we find his alleged back pain is severe.

Tr. 19.

The Commissioner contends that because plaintiff does not challenge the Step Two finding, the remaining challenges to the ALJ's decision at Steps Four and Five are superfluous. In the Reply, plaintiff argues that because the ALJ continued with the sequential evaluation, Step Two arguments were unnecessary.

As will be further explained below, I conclude that substantial evidence supports the ALJ's determination that claimant's alleged back pain was without signs or clinical findings, and thus was not a medically determinable impairment. As the ALJ discussed, claimant suffered a low back strain in 2000, and he was ultimately released in 2001 to perform medium work. Claimant performed periodic work at the medium exertion level, notably doing demolition work as recently as March of 2008, a month before his alleged onset date. At that point, claimant sustained

a facial fracture in a bar fight and stopped working.  As noted by
the ALJ, claimant sought follow up treatment from Dr. Young for an
alleged exacerbation of his low back pain, and was prescribed
Percocet and Oxycodone.  However, aside from claimant's subjective
complaints,   as   the   ALJ   correctly   determined,   his   lumbar
degenerative disc disease is not substantiated by any clinical
findings demonstrating anything more than a slight abnormality at
L4-5.  Moreover, as the ALJ discussed, his MRIs and X-rays remained
unchanged from 2000 to 2010 and the condition appeared not to
impact his ability to work, given that claimant performed medium
exertion work for three months in 2008.

Thus,   there   are   no   medical   signs,   symptoms   or   clinical
findings which demonstrate that claimant's very early degenerative
disc disease would limit his or her ability to conduct basic work
activities.   To the contrary, the evidence before me establishes
only a slight abnormality that has "no more than a minimal effect
on an individual's ability to work."   Webb, 433 F.3d at 686
(citation omitted).  Thus, based on the evidence in the record, the
ALJ could have concluded that claimant was not disabled at Step
Two.

It appears that in an abundance of caution, the ALJ continued
the sequential evaluation until reaching a decision at Step Five.
In an abundance of caution, I do the same.

////

## II.  **Plaintiff's Credibility**

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis.  20 C.F.R. §§ 404.1529, 416.929.  The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Tommasetti, 533 F.3d at 1039; Smolen, 80 F.3d at 1282.  At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms.  Carmickle v. Commissioner Soc. Sec. Admin., 533 F.3d 1155, 1166 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.  Tommasetti, 533 F.3d at 1039; Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995). Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects

of any pain medication, and relevant character evidence. Tommasetti, 533 F.3d at 1039.

At the hearing, when asked to describe his pain, claimant testified that his pain was a 12 on a 10-point scale. After prompting by his attorney to be realistic, claimant responded that his pain was typically at an eight. Claimant stated that his pain limits his activities in all areas, and described that he can sit for 20 minutes, stand for 20 minutes, and walk for 25 minutes, and can lift only five pounds. Claimant testified that he lies down for five to six hours a day to relieve his pain. Claimant also testified that he suffers from depression, including suicidal thoughts.

In a disability report, claimant stated that when his back goes out, he will be in bed for four days. Claimant also described that his back pain interrupts his sleep, and limits his ability to lift. In the disability report, claimant indicated that he stopped working on March 30, 2008, because he was assaulted. Tr. 156. In a September 2008 Function Report, claimant described that he is able to cook, put dishes away and vacuum, but that he is no longer able to mow the lawn or pull weeds. Tr. 165.

In the decision, the ALJ concluded that claimant's medically determinable impairment could reasonably be expected to produce some symptoms, but that claimant's statements concerning the

intensity, persistence, and limiting effects of those symptoms were not entirely credible.

The ALJ gave specific, clear and convincing reasons for discounting claimant's testimony. The ALJ found claimant's failure to report his 2008 employment a compelling reason to doubt claimant's veracity. As the ALJ discussed, claimant worked for three months in 2008 performing construction demolition work, but failed to report this employment in September of 2008 and again in March of 2009 in his reports to the Commissioner. The ALJ also noted that claimant failed to disclose his history of alcohol abuse. The ALJ appropriately discredited claimant for his lack of candor concerning his employment history and his inconsistent statements about his alcohol use. See Thomas, 278 F.3d at 959 (claimant's spotty work history was a valid credibility consideration); see Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999)(relying on inconsistent statements about alcohol use to reject claimant's testimony).

The ALJ also discredited claimant because his complaints are not supported by the medical evidence. When the claimant's own medical record undercuts his assertions, the ALJ may rely on that contradiction to discredit the claimant. Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007). The ALJ discussed that Dr. Robinson noted that there was no medical evidence to "corroborate his atypical complaints of radiculopathy," and found claimant's pain

complaints to be "out of proportion" to his examination and clinical findings.  The ALJ found that claimant's medical records have consistently been within normal limits, citing records from multiple physicians.  As discussed above, the ALJ's findings are wholly supported by substantial evidence in the record.  Thomas, 278 F.3d at 959.

The ALJ also found that claimant's activities of daily living (ADLs) and functioning are inconsistent with his alleged limitations.  Plaintiff complains that the ALJ failed to assess the extent of his activities and whether such activities are transferable to a work setting.  I disagree.

As the ALJ found, claimant was working in a medium exertion job as recently as one month before his amended onset date, and appears to have stopped working after he was in a bar fight.  Claimant also reported playing music in a bar and driving.  The ALJ's findings support his conclusion that claimant was not credible with respect to his limitations and pain allegations.  See Berry v. Astrue, 622 F.3d 1228, 1235 (9th Cir. 2010) (inconsistencies between self-reported symptoms and activities supported adverse credibility finding).  Even if the ALJ erred in relying on claimant's alleged ADLs to discredit him, any such error is harmless.  The ALJ's remaining reasons, when considered in isolation or in combination, provide clear and convincing support

16 - OPINION AND ORDER

for the adverse credibility determination. <u>Carmickle</u>, 533 F.3d at 1162; <u>Tommasetti</u>, 533 F.3d at 1040.

### III. <u>Physician's Opinion</u>

To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons for doing so. <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1216 (9th Cir. 2005); <u>Rodriguez v. Bowen</u>, 876 F.2d 759, 761-62 (9th Cir. 1989). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. <u>Bayliss</u>, 427 F.3d at 1216. An ALJ can meet this burden by providing a detailed summary of the facts and conflicting medical evidence, stating his own interpretation of that evidence, and making findings. <u>Tommasetti</u>, 533 F.3d at 1041; <u>Carmickle</u>, 533 F.3d at 1164; <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989). When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. <u>Bray v. Commissioner of Soc. Sec. Admin.</u>, 554 F.3d 1219, 1228 (9th Cir. 2009); <u>Magallanes</u>, 881 F.2d at 751. An ALJ also may discount a physician's opinion that is based on a claimant's discredited subjective complaints. <u>Tommasetti</u>, 533 F.3d at 1040.

Here, plaintiff complains that the ALJ erred in rejecting the opinion of claimant's treating physician, Dr. Young, who opined the claimant would miss work three days a month due to depression and

back pain.  Dr. Young's opinion was contradicted by numerous other opinions, including Dr. Robinson and Brad Lorber, M.D., examining physicians who opined that claimant could perform a full range of medium work.  Tr. 18, 249-259, 420.

I readily conclude that the ALJ has provided specific and legitimate reasons for rejecting Dr. Young's opinion.  Here, the ALJ gave several reasons for giving Dr. Young's opinion little weight:  (1) his opinion was based on claimant's subjective complaints; (2) his opinion is not supported by clinical findings or medical signs; and (3) his diagnoses are not supported by his own treatment notes.

As discussed at length above with respect to Step Two, the ALJ's determination that claimant's lumbar degenerative disc disease was not supported by medical signs or clinical findings is supported by substantial evidence.  Moreover, Dr. Young's treatment notes do not reflect that he conducted any independent clinical testing to confirm the diagnoses in his opinion letter.  Indeed, the ALJ expressed concern that Dr. Young prescribed narcotic pain medication based on such benign medical findings.  Thus, the ALJ discounted Dr. Young's opinion because it was based solely claimant's subjective pain complaints, was brief and conclusory, and unsupported by his own treatment notes.  Bray, 554 F.3d at 1228 (ALJ not required to accept opinion inadequately supported by clinical findings or based on discredited subjective complaints);

18 - OPINION AND ORDER

Bayliss, 427 F.3d at 1216.  I find no error in the ALJ's treatment of Dr. Young's opinion.

### IV. Lay Testimony

Lay witness testimony as to a claimant's symptoms or how an impairment affects his ability to work is competent evidence, which the ALJ must take into account.  Stout v. Commissioner, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006); Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).  The ALJ is required to account for competent lay witness testimony, and if he rejects it, to provide germane reasons for doing so.  Valentine, 574 F.3d at 694; Dodrill, 12 F.3d at 919.

Plaintiff testified that she performs nearly all of the household chores, such as cleaning and shopping.  Tr. 41. Plaintiff stated that she observed claimant lying down four or five hours a day and watching television.  Plaintiff also described that claimant had difficulty remembering to things, and that she needed to write things down in order to assist claimant.  Tr. 42.

Plaintiff described limitations which were similar to those described by claimant.  Accordingly, the ALJ's well-supported reasons for discounting claimant's testimony apply equally to plaintiff.  Molina, 674 F.3d at 1117; Valentine, 574 F.3d at 694. Thus, the ALJ did not err in discounting plaintiff's lay testimony.

19 – OPINION AND ORDER

V.   **VE Testimony**

Plaintiff complains that the ALJ erred because he failed to inquire whether the VE's testimony was consistent with the DOT. This requirement is based on SSR 00-4p, which provides that when a VE testifies concerning the requirements of a job or occupation, an ALJ has an "affirmative responsibility to ask about any possible conflict between" the VE's evidence and the information provided in the DOT. This Ruling further provides that an ALJ "will ask" the VE if the evidence he or she has provided "is consistent with the DOT, and obtain a reasonable explanation for any apparent conflict."

The Ninth Circuit has determined that an ALJ may rely upon the testimony of a VE regarding the requirements of a particular job, but first must inquire whether the VE's testimony is conflicts with the Dictionary of Occupational Titles. Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007). An ALJ's failure to inquire is a procedural error, and may be harmless if no conflict existed or if the VE "provided sufficient support for [his] conclusion so as to justify any potential conflicts." Id. at 1154 n.19. It is plaintiff's burden to establish that the error was prejudicial. See Shinseki v. Sanders, 556 U.S. 396, 407 (2009); accord Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012).

At the hearing, the ALJ posed a hypothetical to the VE containing all the limitations in the RFC. Based on the

hypothetical, the VE identified two occupations that claimant could perform:  Production Line Assembly Worker, DOT § 706.687-010,[3] and Hand Packager, DOT § 559.687-074.[4]  While the ALJ noted in his decision that the VE's "testimony is consistent with the information contained in the [DOT]," the ALJ did not explicitly pose this question to the VE at the hearing.  Compare Tr. 22 with Tr. 45-48.

Plaintiff argues that this finding is insufficient because conflicts between the VE's testimony and the DOT exist.  Plaintiff argues the jobs identified by the VE are "light" jobs only. According to plaintiff, claimant cannot be on his feet more than

---

[3]The DOT description of the production line assembly worker job is as follows: "Performs repetitive bench or line assembly operations to mass-produce products, such as automobile or tractor radiators, blower wheels, refrigerators, or gas stoves: Places parts in specified relationship to each other. Bolts, clips, screws, cements, or otherwise fastens parts together by hand, or using handtools or portable power tools. May tend machines, such as arbor presses or riveting machine, to perform force fitting or fastening operations on assembly line. May be assigned to different work stations as production needs require. May work on line where tasks vary as different model of same article moves along line. May be designated according to part or product produced."

[4]The DOT description of the hand packager job is as follows: "Inspects molded plastic products, such as bottle caps or tops, for defects, and packs inspected products into shipping cartons: Visually examines molded products for defects, such as scratches, discoloration, and flash, and discards defective products. Packs inspected product in cartons according to customer specifications, and carries cartons to storage area. May attach metal bands to bottle tops prior to packing to form necks for bottles and measure necks to ensure specified length, using gauge."

two hours a day, can walk a distance of four blocks, and can perform at only 90 percent stamina, and thus the jobs identified exceed claimant's abilities as described in the ALJ's RFC. The Commissioner submits that the ALJ's error is harmless at best. I agree.

Initially, I note that "light" jobs require "a good deal of walk or standing, or ... involve[] sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). Although claimant was limited to pushing/pulling 20 pounds occasionally in the RFC, plaintiff has failed to establish that this conflicts with "some" pushing and pulling of leg controls as defined in the regulation. Additionally, in response to the ALJ's hypothetical, the VE testified that claimant could perform "bench work." In reading the VE's testimony, it is clear that the VE intended that claimant would be sitting while performing the jobs he identified. Tr. 48. Moreover, reviewing the DOT descriptions of the jobs also fails to reveal an apparent conflict between the VE's testimony and the DOT. Indeed, the production line assembly worker job specifically provides for bench work, and the hand packager job fails to describe any length of time the job is performed standing or walking that would exceed claimant's RFC.

Plaintiff correctly states that no light job specifically provides for a worker who has 90 percent stamina. This potential conflict appears speculative at best. In the RFC, the ALJ

specifically stated that the stamina limitation was based on "subjective fatigue complaints" and that the ALJ intended to address those complaints by limiting claimant to modified light exertion, as opposed to his previously performed heavy and medium work.   Tr. 20.   As discussed above, the ALJ's adverse credibility determination is wholly supported by substantial evidence in the record.   Thus, I conclude that plaintiff has failed to demonstrate that an actual or apparent conflict existed between the VE's testimony and the DOT.   Furthermore, plaintiff has failed to establish, when considering the record as a whole, that actual prejudice resulted from the ALJ's failure to so inquire.   Massachi, 486 F.3d at 1154 n.19; Ludwig, 681 F.3d at 1055 (in the absence of a demonstration that the decision would have been different, reversal on the basis of procedural error is not warranted).

## CONCLUSION

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is AFFIRMED.   This action is DISMISSED.

IT IS SO ORDERED.

DATED this _17_ day of JULY, 2013.

_Malcolm F. Marsh_
Malcolm F. Marsh
United States District Judge

23 - OPINION AND ORDER